FILED
U.S. DISTRICT COURT E.D.N.Y
★ DEC 16 2009 ★
BROOKLYN OFFICE

TM:EMN/JMR
F.#2009R00579

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

JOHN BURKE and
DAVID D'ARPINO,

           Defendants.

- - - - - - - - - - - - - - - -X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 09-135 (S-2) (SJ)
(T. 18, U.S.C., §§
924(c)(1)(A)(i),
924(c)(1)(A)(ii),
924(c)(1)(A)(iii), 924(d),
924(j)(1), 1959(a)(1),
1962(d), 1963, 2 and 3551
et seq.; 21 U.S.C. §§
848(e)(1)(A); T. 28,
U.S.C., § 2461(c)))

THE GRAND JURY CHARGES:

       At all times relevant to this Indictment unless otherwise indicated:

The Enterprise

       1.    The members and associates of the Gambino organized crime family of La Cosa Nostra (the "Gambino family") constituted an "enterprise," as defined in Title 18, United States Code, Sections 1959(b)(2) and 1961(4), that is, a group of individuals associated in fact.  The Gambino family constituted an ongoing organization, whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.  The Gambino family engaged in, and its activities affected, interstate and foreign commerce.  The Gambino family

was an organized criminal group that operated in the Eastern District of New York and other parts of the United States.

2. The Gambino family operated through groups of individuals headed by "captains," who were also referred to as "skippers," "caporegimes" and "capodecinas." These groups, which were referred to as "crews," "regimes" and "decinas," consisted of "made" members of the Gambino family, also referred to as "soldiers," "friends of ours," "good fellows" and "buttons," as well as associates of the Gambino family.

3. Each captain was responsible for supervising the criminal activities of his crew and providing crew members and associates with support and protection. In return, the captain received a share of the earnings of each of the crew's members and associates.

4. Above the captains were the three highest-ranking members of the Gambino family. The head of the Gambino family was known as the "boss." He was assisted by an "underboss" and a counselor, who was known as the "consigliere." With the assistance of the underboss and consigliere, the boss was responsible for setting policy, resolving disputes between members and associates of the Gambino family and members and associates of other criminal organizations, and approving all significant actions taken by members and associates of the Gambino family, including murder.

2

5.    The boss, underboss and consigliere of the Gambino family, who were sometimes referred to collectively as the "administration," supervised, supported, protected and disciplined the captains, soldiers and associates and regularly received reports regarding the activities of the members and associates of the Gambino family.  In return for their supervision and protection, the boss, underboss and consigliere received part of the illegal earnings of each crew.  When a member of the administration was unable to fulfill his criminal responsibilities because of incarceration, ill health or other reason, a member of the Gambino family was often appointed to that position in an acting capacity.

6.    The Gambino family was part of a nationwide criminal organization known by various names, including the "mafia" and "La Cosa Nostra," which operated through entities known as "families."  The ruling body of this nationwide organization was known as the "commission," the membership of which at various times has included the bosses of the five New York City-based families, to wit: the Bonanno, Colombo, Gambino, Genovese and Luchese organized crime families.

7.    From time to time, the Gambino family would propose a list of associates to be "made," that is, to become members of the Gambino family.  The list would be circulated to the other families based in New York City.

The Purposes, Methods and Means of the Enterprise

8.    The principal purpose of the Gambino family was to generate money for its members and associates.  This purpose was implemented by members and associates of the Gambino family through various criminal activities, including narcotics distribution, robbery, extortion, illegal gambling and loansharking.  The members and associates of the Gambino family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9.    Although the primary purpose of the Gambino family was to generate money for its members and associates, the members and associates at times used the resources of the Gambino family to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the Gambino family.  For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

10.    The members and associates of the Gambino family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities.  That conduct included a commitment to murdering persons, particularly members or associates of

4

organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

    11. Members and associates of the Gambino family often coordinated street-level criminal activity, such as extortion and fraud, with members and associates of other organized crime families.

The Defendants

    12. At various times relevant to this Indictment, the defendants JOHN BURKE and DAVID D'ARPINO were associates in the Gambino family.

COUNT ONE
(Racketeering Conspiracy)

    13. The allegations contained in paragraphs one through twelve are realleged and incorporated as if fully set forth in this paragraph.

    14. In or about and between November 1990 and July 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN BURKE, together with others, being a person employed by and associated with the Gambino family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of

racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5).

15. The pattern of racketeering activity through which BURKE and others agreed to conduct the affairs of the enterprise consisted of the racketeering acts set forth below. BURKE agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

RACKETEERING ACT ONE
(Cocaine Distribution)

16. The defendant JOHN BURKE committed the following acts, either one of which alone constitutes Racketeering Act One:

A. <u>Cocaine Distribution Conspiracy</u>

17. In or about and between November 1990 and June 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN BURKE, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846.

B. <u>Cocaine Distribution</u>

18. In or about and between November 1990 and June 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN BURKE, together with others, did knowingly and intentionally

6

distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

RACKETEERING ACT TWO
(Marijuana Distribution)

19.   The defendant JOHN BURKE committed the following acts, either one of which alone constitutes Racketeering Act Two:

A.   <u>Marijuana Distribution Conspiracy</u>

20.   In or about and between January 1991 and June 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN BURKE, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846.

B.   <u>Marijuana Distribution</u>

21.   In or about and between January 1991 and June 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN BURKE, together with others, did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which offense involved marijuana, a Schedule I

7

controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

### RACKETEERING ACT THREE
(Murder - Bruce Gotterup)

22.   The defendant JOHN BURKE committed the following acts, either one of which alone constitutes Racketeering Act Three:

A.   Conspiracy to Murder Bruce Gotterup

23.   On or about and between November 1, 1991 and November 20, 1991, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN BURKE, together with others, did knowingly and intentionally conspire to cause the death of Bruce Gotterup, in violation of New York Penal Law Sections 125.25(1) and 105.15.

B.   Murder of Bruce Gotterup

24.   On or about November 20, 1991, within the Eastern District of New York, the defendant JOHN BURKE, together with others, with intent to cause the death of Bruce Gotterup, caused his death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

8

### RACKETEERING ACT FOUR
(Murder - John Gebert)

25.   The defendant JOHN BURKE committed the following acts, either one of which alone constitutes Racketeering Act Four:

A.   Conspiracy to Murder John Gebert

26.   On or about and between April 1, 1996 and July 12, 1996, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN BURKE, together with others, did knowingly and intentionally conspire to cause the death of John Gebert, in violation of New York Penal Law Sections 125.25(1) and 105.15.

B.   Murder of John Gebert

27.   On or about July 12, 1996, within the Eastern District of New York, the defendant JOHN BURKE, together with others, with intent to cause the death of John Gebert, caused his death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

### RACKETEERING ACT FIVE
(Attempted Robbery - Queens Residence)

28.   The defendant JOHN BURKE committed the following acts, either one of which alone constitutes Racketeering Act Five:

A.   Robbery Conspiracy

29.  In or about and between July 1996 and July 1997, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN BURKE, together with others, did knowingly and intentionally conspire to forcibly steal property, to wit: United States currency, from an individual in a residence in Queens, New York, while aided by another person actually present, in violation of New York Penal Law Sections 160.10(1) and 105.10.

B.   Attempted Robbery

30.  In or about and between July 1996 and July 1997, both dates being approximate and inclusive, within the Eastern District of New York, the defendant JOHN BURKE, together with others, did knowingly and intentionally attempt to forcibly steal property, to wit: United States currency, from one or more individuals in a residence in Queens, New York, in violation of New York Penal Law Sections 160.05, 110.00 and 20.00.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

COUNT TWO
(Murder in Aid of Racketeering)

31.  At all times relevant to this Indictment, the Gambino family, as more fully described in paragraphs one through twelve above, which are realleged and incorporated as if fully set forth in this paragraph, constituted an enterprise as defined

10

in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate and foreign commerce.

32.   At all times relevant to this Indictment, the Gambino family, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder and robbery, in violation of New York State Penal Law, and acts involving violations of Title 21, United States Code, Sections 841 and 846 (narcotics trafficking).

33.   On or about July 12, 1996, within the Eastern District of New York, the defendants JOHN BURKE and DAVID D'ARPINO, together with others, for the purpose of gaining entrance to and maintaining and increasing position in the Gambino family, an enterprise engaged in racketeering activity, did knowingly and intentionally murder John Gebert, in violation of New York Penal Law Sections 125.25(1) and 20.

(Title 18, United States Code, Sections 1959(a)(1), 2 and 3551 et seq.)

### COUNT THREE
(Murder - Continuing Criminal Enterprise)

34.   On or about July 12, 1996, within the Eastern District of New York, the defendant JOHN BURKE, together with others, while engaging in and working in furtherance of a

11

continuing criminal enterprise, did knowingly and intentionally kill and cause the intentional killing of another person, to wit: John Gebert, and such killing did result.

(Title 21, United States Code, Sections 848(e)(1)(A); Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT FOUR
(Using, Carrying and Possessing a Firearm)

35.   In or about and between November 1990 and July 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN BURKE, together with others, did knowingly and intentionally use and carry a firearm during and in relation to a crime of violence, to wit: the crime charged in Count One, and did knowingly and intentionally possess such firearm in furtherance of said crime of violence.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 2 and 3551 et seq.)

## COUNT FIVE
(Causing Death Through Use of a Firearm)

36.   On or about July 12, 1996, within the Eastern District of New York, the defendant JOHN BURKE, together with others, in the course of a violation of Title 18, United States Code, Section 924(c), to wit: the crime charged in Count Four, did knowingly and intentionally cause the death of a person through the use of a firearm, which killing is a murder as

12

defined in Title 18, United States Code, Section 1111(a), in that the defendant, with malice aforethought, did unlawfully kill John Gebert willfully, deliberately, maliciously and with premeditation.

(Title 18, United States Code, Sections 924(j)(1), 2 and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNT ONE

37.   The United States hereby gives notice to the defendant JOHN BURKE that, upon his conviction of Count One, the government will seek forfeiture in accordance with Title 18, United States Code, Section 1963, which requires the defendant, upon conviction of such offense, to forfeit any property:

a.   the defendant has acquired an interest in and maintained in violation of Title 18, United States Code, Section 1962, which interest is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

b.   the defendant has an interest in, security of, claims against and property and contractual rights that afford a source of influence over the enterprise that the defendant and his coconspirators established, operated, controlled, conducted and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interest, security, claims and rights are subject to forfeiture

to the United States pursuant to Title 18, United States Code, Section 1963(a)(2); and

        c.    the defendant derived from proceeds obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

        38.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

        a.    cannot be located upon the exercise of due diligence;

        b.    has been transferred or sold to, or deposited with, a third party;

        c.    has been placed beyond the jurisdiction of the court;

        d.    has been substantially diminished in value; or

        e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

        (Title 18, United States Code, Section 1963)

CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS FOUR AND FIVE

39.   The United States hereby gives notice to the defendant JOHN BURKE that, upon his conviction of Counts Four and/or Five, the government will seek forfeiture in accordance with Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c), which requires the defendant, upon conviction of any such offenses, to forfeit any firearms and ammunition involved in the commission of any such offenses.

40.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty;
it is the intent of the United States, pursuant to Title 18, United States Code, Section 853(p), to seek forfeiture of any

15

other property of the defendant up to the value of the

forfeitable property described in this forfeiture allegation.

      (Title 18, United States Code, Section 924(d); Title

28, United States Code, Section 2461(c))


                                    A TRUE BILL

                                    _____

                                    FOREPERSON

_____

BENTON J. CAMPBELL
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

16

F.#2009R00579

No. 09 CR 135 (S-2) (SJ)

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs*

*JOHN BURKE and DAVID D'ARPINO,*

Defendants.

## SUPERSEDING INDICTMENT

(T. 18, U.S.C., §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii),
924(c)(1)(A)(iii), 924(d), 924(j)(1), 1959(a)(1), 1962(d),
1963, 2 and 3551 et seq.; 21 U.S.C. §§ 848(e)(1)(A);
T. 28, U.S.C., § 2461(c)))

*A true bill.*

_____
                                         *Foreman*

Filed in open court this _____

of _____ A.D. 20 _____

_____ day,

_____
                                         *Clerk*

Bail, $ _____

_____

*Evan M. Norris, Assistant U.S. Attorney, (718) 254-6376*
*Jacquelyn M. Rasulo, Assistant U.S. Attorney, (718) 254-6103*